UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

EMAN BAYANI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

T-MOBILE USA, INC.,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Eman Bayani ("Bayani" or "Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows:

## I. NATURE OF THE ACTION

1. T-Mobile USA, Inc. ("T-Mobile" or "Defendant") failed to protect Plaintiff's and other customers' personal and financial information.

2. Plaintiff and the proposed class were victims of a SIM card swapping scam perpetrated through their T-Mobile cellular accounts. Using T-Mobile's services, scammers convinced T-Mobile to transfer access to Plaintiff's phone number from his registered SIM card to the scammer's SIM card. By requesting these fraudulent SIM card transfers, the scammers were able to access Plaintiff's personal information, including Plaintiff's email, banking, and investment accounts.

3. According to the Federal Trade Commission ("FTC"), a SIM swap scammer contacts a cell phone service provider, like T-Mobile, saying the victim's phone was lost or damaged. Then



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

the scammer asks the cell service provider to activate a new SIM card connected to the victim's phone number on a new phone — a phone the scammer owns. Failing to exercise due diligence or properly investigate, the provider improperly activates the new SIM card, allowing the scammer to receive all the victim's text messages, calls, and data on the new phone.[1]

4. Once a scammer has connected their SIM card with the victim's phone number, the scammer is able to access anything that was previously accessible to the victim through their cell phone. "Armed with your log in credentials, the scammer could log in to your bank account and steal your money, or take over your email or social media accounts. And they could change the passwords and lock you out of your accounts."[2]

5. As a result of unauthorized access to Plaintiff's SIM, scammers were able to access Plaintiff's Coinbase account[3] where they purchased and transferred out over $24,000 worth of cryptocurrency. Plaintiff has lost those funds and is currently indebted to Coinbase for $2,706 that was unlawfully transferred from his bank account to Coinbase.[4]

6. Scammers were able to perpetrate this "SIM swap scam" because of T-Mobile's gross negligence in protecting Plaintiff's and other customers' private financial and personal information, its negligent hiring and supervision of T-Mobile employees who were responsible for safeguarding that information, and its violation of laws that expressly protect the information of wireless carrier customers.

---

1 https://consumer.ftc.gov/consumer-alerts/2019/10/sim-swap-scams-how-protect-yourself

2 *Id*.

3 Coinbase is a program that permits the user to buy, sell, and manage their cryptocurrency, including Bitcoin.

4 Plaintiff's bank reversed the unlawful transfer, but Coinbase allowed the transaction to go through such that Coinbase now claims Plaintiff owes it money.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

7. T-Mobile is aware of these fraudulent practices by scammers. Aside from warnings from the FTC, T-Mobile has faced multiple lawsuits by customers alleging the same violations of law as Plaintiff. [5]

8. Plaintiff brings this action on behalf of himself and all other similarly situated customers pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the law.

## II. THE PARTIES

**Plaintiff Eman Bayani**

9. Bayani is an adult individual who is a resident of Illinois.

10. Bayani has been a T-Mobile customer since December 2021.

**Defendant T-Mobile USA, Inc.**

11. Defendant is a business corporation organized and existing under the laws of Delaware.

12. Defendant's headquarters and principal place of business in the United States is in Bellevue, Washington, located in King County.

13. T-Mobile markets and sells wireless cellular phone service through standardized wireless service plans via various retail locations, online sales, and over the telephone.

14. T-Mobile maintains accounts for its wireless customers, enabling them to access information about the services they purchase from T-Mobile.

15. As a wireless carrier, T-Mobile must comply with federal and state statutes, including, but not limited to, the Federal Communications Act ("FCA"), 47 U.S.C. §222.

## III. JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff brings claims under several federal statutes and thus presents a federal question that vests this Court with jurisdiction.

---

[5] *See Middleton v. T-Mobile US Inc.*, 1:20-cv-03276-NGG-JRC, Dkt. No. 1 (E.D.N.Y); *Harris v. T-Mobile USA Inc.*, 2:21-cv-03006-AB, Dkt. No. 1 (E.D. Penn.).



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

17. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because the claims are derived from a common nucleus of operative facts.

18. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(1) because T-Mobile's principal place of business is located in Bellevue, Washington and thus, this is a district in which Defendant resides.

19. The choice of law and venue provisions in T-Mobile's form "Terms and Conditions" do not apply to Plaintiff's claims in this case because Plaintiff's claims do not arise out of that agreement, but rather arise under state and federal law.

## IV. PLAINTIFF'S FACTUAL ALLEGATIONS

Consistent with their policies and patterns or practices as described herein, Defendant harmed Plaintiff, individually, as follows:

20. On or around December 11, 2021, Plaintiff entered into a contract with T-Mobile for wireless cellular service at a MetroPCS store located in Lincolnwood, Illinois.

21. On or around December 19, 2021, during a business trip in Texas, Plaintiff lost access to his SIM card.

22. On or around December 21, 2021, Plaintiff went to a MetroPCS store in Paris, Texas where he was informed that his cellular plan had an outstanding charge of $140. Plaintiff complained that he did not owe the fee. T-Mobile removed the fee and restored service to Plaintiff's phone. Approximately 2 hours after service was restored, Plaintiff again was unable to access to his account.

23. On or around December 22, 2021, Plaintiff returned to the Paris, Texas MetroPCS store to address the issue, but they were unable to assist Plaintiff because his security codes, passwords, and/or PINs were not working.

24. On or around December 23, 2021, Plaintiff's wife went to the MetroPCS store in Lincolnwood, Illinois to attempt to resolve the issue. She was informed of a service charge and that the account had an unpaid balance. She paid the $70.12 balance. Service was again temporarily returned to Plaintiff's phone.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

25. On or around December 24, 2021 at approximately 11:00 AM, Plaintiff again lost access to his account. He attempted again to restore access to his account at a different MetroPCS store in Paris, Texas. The T-Mobile employee at the store told Plaintiff to contact customer service.

26. Plaintiff contacted T-Mobile's customer service where he was informed that the retail store would need to talk with the employees at the store and have them verify Plaintiff's ID. He was told there were additional charges on his account of $46 and $1. He paid these charges. Plaintiff's service was ultimately restored that day.

27. On or around December 27, 2021, Plaintiff went to a MetroPCS corporate store located in Dallas, Texas to figure out what had happened to his account. At the store, Plaintiff was shown several unlawful SIM swaps that had occurred.

28. On or around December 28, 2021, Plaintiff filed a police report with the Paris, Texas police.

29. During the multiple unlawful SIM swaps that occurred, scammers were able to access Plaintiff's email accounts, banking accounts, and Coinbase account. Scammers took approximately $21,000 of cash reserves in Plaintiff's Coinbase account to purchase Bitcoin and transfer it out, transferred approximately $2,700 from Plaintiff's Bank of America account to Plaintiff's Coinbase account to purchase Bitcoin and transfer it out, and sold approximately $378 of cryptocurrency in Plaintiff's Coinbase account to purchase Bitcoin and transfer it out.

30. Scammers were able to access these accounts because of unlawful access to Plaintiff's SIM. By having access to Plaintiff's SIM, scammers could use text verification to reset Plaintiff's passwords on his email, banking, and Coinbase accounts and to withdraw funds from those accounts.

31. The unauthorized activity on Plaintiff's T-Mobile account was later confirmed by T-Mobile. Exhibit A, Letters to Plaintiff.

32. On or about January 10, 2022, Plaintiff opted out of T-Mobile's arbitration agreement. Exhibit B, Opt-Out Confirmation.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**T-MOBILE'S INADEQUATE SECURITY POLICIES AND PRACTICES**

33. The FCA obligates T-Mobile to protect the "confidential proprietary information of [its] customers" and "customer proprietary network information" (commonly referred to as "CPI" and "CPNI", respectively). *See* 47 U.S.C. §222(a), (c).

34. The Federal Communications Commission ("FCC") has promulgated rules to implement Section 222 of the FCA "to ensure that telecommunications carriers establish effective safeguards to protect against unauthorized use or disclosure of CPNI." 13 FCC Rcd. at 8195 ¶ 193; *see also* 47 C.F.R. §64.2001 *et seq*. ("CPNI Rules").

35. The CPNI Rules generally prohibit disclosure and use of CPNI without customer approval except in certain limited circumstances (such as cooperation with law enforcement). *See* 47 C.F.R. § 64.2005.

36. The CPNI Rules also require carriers to implement safeguards to protect customers' CPNI. *See* 47 C.F.R. § 64.2009(b), (d), & (e).

37. These safeguards include: (a) training personnel "as to when they are and are not authorized to use CPNI;" (b) establishing "a supervisory review process regarding carrier compliance with the rules;" and (c) filing annual compliance certificates with the FCC. *Id.*

38. The CPNI Rules further require carriers to implement measures to prevent the disclosure of CPNI to unauthorized individuals. For example, "carriers must take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI." *See* 47 C.F.R. § 64.2010(a).

39. T-Mobile failed to provide reasonable and appropriate security to prevent unauthorized access to Plaintiff's and other customers' accounts.

40. For instance, upon information and belief, under the inadequate procedures implemented by T-Mobile, unauthorized persons, including T-Mobile's own officers, agents, and employees, can authenticate, access, share, and make changes to customers' information without customer permission.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

41. T-Mobile failed to disclose or made deceptive statements designed to cover up for the fact that it is aware that its security procedures can and do fall short of its expressed and implied representations and promises, as well as its statutory duties.

42. Such failures, which led to unauthorized access to customers' information, were entirely foreseeable by T-Mobile.

43. By its procedures, practices, and regulations, T-Mobile fails to provide reasonable and appropriate security to prevent unauthorized access to its customer wireless accounts, allowing unauthorized persons to be authenticated and then granted access to sensitive customer wireless account data.

44. In particular, T-Mobile has failed to establish or implement reasonable policies, procedures, or regulations governing the creation and authentication of user credentials for authorized customers accessing T-Mobile accounts, creating an unreasonable risk of unauthorized access. As such, at all times material hereto, T-Mobile has failed to ensure that only authorized persons have such access and that customer accounts are secure.

45. T-Mobile established user credential structures that created an unreasonable risk of unauthorized access to customer accounts, including that of Plaintiff.

46. On information and belief, T-Mobile has long been aware of the security risks presented by its weak user credential structures and procedures. From prior attacks on customer accounts, T-Mobile has long had notice of those risks. In addition, T- Mobile did not use readily available security measures to prevent or limit such attacks.

47. As a result of T-Mobile's faulty security practices, scammers can easily gain access to a customer's account and then use it to gain access to the customer's sensitive information, including bank accounts or virtual currency accounts.

48. As a result, T-Mobile's security measures were inadequate to protect its customers, including Plaintiff.

49. Lack of adequate security in T-Mobile's systems, practices, or procedures enabled the unauthorized third parties to access Plaintiff's wireless account, which then



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

enabled the unauthorized third parties to access Plaintiff's virtual currency accounts, private cloud data storage and computer accounts, email services, and possibly other sensitive information, where mobile phone numbers, text messages, and phone call-back features are used as the first or second factor in two factor authentication (2FA) security schemes – which, at the time of the security breaches negligently allowed by T-Mobile, were the standard secure log-in procedures, and are still used quite often today.

50. As such, T-Mobile failed in the duty and responsibility it owed to Plaintiff to protect his account and phone number. Even if the subject incident was due to an "inside" job or human performance falling short, T-Mobile is responsible for its agents. And, while T-Mobile can outsource customer service functions, T-Mobile cannot transfer accountability.

51. If not for T-Mobile's failure to provided adequate security and/or exercise reasonable oversight, Plaintiff and Class members would not have incurred damages.

52. As a direct consequence of T-Mobile's actions or inactions, Plaintiff and Class members have suffered and continue to suffer actual damages, including: (a) lost time; (b) expenses, including missed work, delayed projects, and attorneys' fees and costs, (c) lost money, including amounts used to purchase Bitcoin; and (d) costs inherent in being deprived of one's financial assets, such as the cost of not being able to sell those financial assets for cash at will to address Plaintiff's financial needs.

## V. CLASS ACTION ALLEGATIONS

53. Plaintiff brings his claims under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a proposed Class of persons consisting of:

> All T-Mobile customers in the United States, beginning two years before the filing of the Complaint and continuing through the resolution of the action, who (1) were victims of a SIM swap scam and (2) opted out of T-Mobile's arbitration policy.

54. The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, there are more than fifty members of the Class.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

55. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief he seeks is typical of the relief sought by each member of the Class.

56. Plaintiff and the Class have all been injured due to Defendant's common policies, practices, negligence, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the Class similarly.

57. Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

58. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and consumer litigation.

59. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of consumer litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions would create.

60. Common questions of law and fact exist as to the Class that predominate over any questions only affecting Plaintiff and/or each member of the Class individually and include, but are not limited to, whether T-Mobile:

a. failed to establish or enforce rules sufficient to ensure only authorized persons have access to T-Mobile customer accounts;

b. failed to establish appropriate rules, policies, and procedures for the supervision and control of its officers, agents, or employees;

c. failed to establish or enforce rules, or provide adequate supervision or training, sufficient to ensure that all its employees or agents follow the same policies and procedures;



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

d. failed to adequately safeguard and protect its customer wireless accounts so that unauthorized third parties were able to obtain access to those accounts;

e. permitted the sharing of and access to user credentials among T-Mobile's agents or employees without a pending request from the customer, thus reducing likely detection of, and accountability for, unauthorized access;

f. failed to suspend user credentials after a certain number of unsuccessful access attempts;

g. failed to adequately train and supervise its agents and employees, allowing them, without authorization or approval, to unilaterally access and make changes to customer accounts as if the customer had so authorized;

h. allowed porting out of phone numbers without properly confirming that the request was coming from a legitimate customer;

i. lacked proper monitoring solutions and thus failed to monitor its systems for the presence of unauthorized access in a manner that would enable T-Mobile to detect the intrusion;

j. failed to implement defenses to identity thieves; and

k. failed to build adequate internal tools to help protect its customers against scammers and account takeovers.

**FIRST CAUSE OF ACTION**
**Violations of the Federal Communications Act**
**(Brought on behalf of Plaintiff and the Class)**

61. Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

62. The FCA regulates interstate telecommunications carriers, including T-Mobile.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

63. T-Mobile is a "common carrier" and/or a "telecommunications carrier" engaged in interstate commerce by wire for the purpose of furnishing communication services within the meaning of Section 201(a) of the FCA. *See* 47 U.S.C. § 201(a). As a result, T-Mobile is subject to the substantive requirements of Sections 201 through 222 of the FCA. *See* 47 U.S.C. §§201-222.

64. Under Section 201(b) of the FCA, common carriers may implement only those practices and regulations that are "just and reasonable," and practices that are "unjust or unreasonable" are unlawful.

65. Section 206 of the FCA, entitled "Carriers' liability for damages," provides:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

66. Section 207 of the FCA, entitled "Recovery of damages" further provides:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the [FCC] as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both remedies.

67. Section 222(a) of the FCA explicitly requires that a telecommunications carrier protect its customers' CPI. *See* 47 U.S.C. §222(a).

68. Additionally, Section 222(c) of the FCA explicitly requires that a telecommunications carrier protect its customers' CPNI. *See* 47 U.S.C. §222(c).

69. According to the CPNI Rules, 47 C.F.R. § 64.2010,



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

> Telecommunications carriers must take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI. Telecommunications carriers must properly authenticate a customer prior to disclosing CPNI based on customer-initiated contact, online account access, or an in-store visit.... In-store access to CPNI. A telecommunications carrier may disclose CPNI to a customer who, at a carrier's retail location, first presents to the telecommunications carrier or its agent a valid photo ID matching the customer's account information.

70. T-Mobile violated its duties under Section 222 of the FCA by failing to protect Plaintiff's and the Class's CPI and CPNI by using, disclosing, or permitting access to their CPI and CPNI without the consent, notice, and/or legal authorization as required by the FCA.

71. As alleged herein, T-Mobile failed to protect the confidentiality of Plaintiff's and the Class's CPI and CPNI when it disclosed their CPNI and CPI to third-parties without their authorization or permission.

72. T-Mobile's conduct, as alleged herein, constitutes knowing violations of the FCA, including sections 201(b) and 222, as well as the CPNI Rules.

73. T-Mobile is also liable for the acts, omissions, and/or failures, as alleged herein, of its officers, employees, agents, or any other persons acting for or on behalf of T-Mobile.

74. Had T-Mobile not allowed the unauthorized access to Plaintiff's and the Class's accounts, they would not have suffered loss.

**SECOND CAUSE OF ACTION**
**Negligence**
**(Brought on behalf of Plaintiff and the Class)**

75. Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

76. T-Mobile owed Plaintiff and the Class a duty of reasonable care in the handling and safeguarding of their customer account data, including their CPI and CPNI, for the purposes of providing wireless services.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

77. T-Mobile's duty to protect its customers' data from unauthorized access is required by federal and state law.

78. T-Mobile breached the duties owed by failing to protect Plaintiff's and the Class's T-Mobile accounts by providing scammers access to their accounts and, thus, to Plaintiff's and the Class's personal, business, and financial information, without authorization.

79. T-Mobile further breached the duties owed to Plaintiff and the Class by failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and the Class's CPI and CPNI.

80. As a direct consequence of T-Mobile's negligence, Plaintiff and the Class have been damaged, and continue to suffer injury.

**THIRD CAUSE OF ACTION**
**Negligent Hiring, Retention and Supervision**
**(Brought on behalf of Plaintiff and the Class)**

81. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

82. At all material times herein, T-Mobile's agents, officers, and employees, including, but not limited to, those directly or indirectly responsible for or involved in allowing unauthorized access to Plaintiff's and the Class's confidential and proprietary account information, were under T-Mobile's direct supervision and control.

83. T-Mobile owed a duty to Plaintiff and the Class to exercise reasonable care in hiring, supervising, and training its officers, agents, and employees to safeguard CPI and CPNI and to prevent it from being compromised, lost, stolen, misused, or disclosed to unauthorized parties.

84. Upon information and belief, T-Mobile negligently hired, retained, controlled, trained, and supervised the officers, agents, and employees under its control, or knew or should have known that such officers, agents, and employees could allow unauthorized access to customer accounts, including those of Plaintiff and the Class.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

85. Upon information and belief, T-Mobile negligently failed to implement systems and procedures necessary to prevent its officers, agents, and employees from allowing or obtaining unauthorized access to customer accounts, including that of Plaintiff and the Class.

86. Upon information and belief, T-Mobile's negligent hiring, retention, control, training, and supervision allowed the unauthorized access to customers' accounts, resulting in damage to T-Mobile customers and foreseeable victims in the public at large, including Plaintiff and the Class.

87. Given T-Mobile's experience with account takeover and SIM swap scams (including some perpetrated and/or assisted by Defendant's own employees, officers or agents), T-Mobile's failure to exercise reasonable care in screening, supervising, and controlling its officers, agents and employees was a breach of its duty to its customers, including Plaintiff and the Class.

88. It was entirely foreseeable to T-Mobile that unauthorized persons would attempt to gain unauthorized access to T-Mobile customers' data and, despite this, T-Mobile failed to implement sufficient safeguards and procedures to prevent its officers, agents and employees from granting or obtaining such unauthorized access.

89. Upon information and belief, T-Mobile engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its officers, agents, and employees.

90. As a direct consequence of T-Mobile's negligent hiring, retention, control, and supervision of its officers, agents, and employees, who enabled or obtained the unauthorized access, Plaintiff and the Class were damaged.

**FOURTH CAUSE OF ACTION**
**Violation of the Stored Communications Act**
**(Brought on behalf of Plaintiff and the Class)**

91. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

92. Under the Stored Communications Act ("SCA"), 18 U.S.C. §2701 et seq., "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. §2702(a)(1).

93. Section 2702(a)(2) of the SCA further states:

> [A] person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service (A) on behalf of, and received by means of electronic transmission from (or created by means of electronic transmission from), a subscriber or customer of such service; [or] (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for the purposes of providing any services other than storage or computer processing.

94. Although the SCA contains several exceptions to the prohibitions set forth in Sections 2702(a)(1) and (2), none of them are applicable to the circumstances at issue in this case.

95. The SCA creates a private right of action for those "aggrieved by any violation" of its provisions. 18 U.S.C. §2707(a).

96. The conduct of T-Mobile, as alleged herein, constitutes a knowing and/or intentional violation of the SCA's Section 2702(a).

97. Plaintiff and the Class have been "aggrieved" by the conduct of T-Mobile as alleged herein, in that Plaintiff's and the Class's property has been stolen.

98. Pursuant to the SCA, Plaintiff and the Class are entitled to the greater of actual damages or $1,000 per person in statutory damages, punitive damages, and reasonable attorneys' fees and costs. *See* 18 U.S.C. §2707(c).



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**FIFTH CAUSE OF ACTION**
**Violation of the Computer Fraud and Abuse Act ("CFAA")**
**(Brought on behalf of Plaintiff and the Class)**

99. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

100. The CFAA governs those who intentionally access computers without authorization or who intentionally exceed authorized access and as a result of such conduct, cause damage and loss.

101. A cell phone is a "computer" within the meaning of the CFAA. *See* 18 U.S.C. § 1030(e)(1).

102. As set forth in the CFAA, the term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser [sic] is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

103. As alleged herein, a SIM swap scam requires intentional access to customer computer data by T-Mobile which exceeds its authority and which conduct has caused damage and loss.

104. T-Mobile is subject to the provisions of the CFAA.

105. T-Mobile's conduct, as alleged herein, constitutes a knowing violation of the CFAA.

106. T-Mobile is also liable for the acts, omissions, and/or failures, as alleged herein, of any of its officers, employees, agents, or any other person acting for or on behalf of T-Mobile.

107. T-Mobile violated the CFAA by exceeding its authority to access the computer data and breaching the confidentiality of the proprietary information of Plaintiff and the Class by using, disclosing, or permitting access to Plaintiff's and the Class's CPI and/or CPNI without the consent, notice and/or legal authorization as required by the CFAA.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

108. Section 1030(g) of the CFAA provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involved 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.

109. Plaintiff and the Class have suffered aggregate damages which exceed the threshold of $5,000 as required by Section 1030(c)(4)(A)(i)(I) of the CFAA.

110. Upon information and belief, T-Mobile's conduct as alleged herein constitutes a violation of Section (a)(5)(A) of the CFAA.

111. Upon information and belief, T-Mobile's conduct as alleged herein may constitute an intentional violation of Section (a)(5)(C) of the CFAA.

112. As a direct consequence of T-Mobile's violations of the CFAA, Plaintiff and the Class have been damaged as set forth throughout this Complaint, plus fees and costs, including reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Violations of the Washington Consumer Protection Act, RCW 19.86**
**(Brought on behalf of Plaintiff and the Class)**

113. Plaintiff incorporates herein by reference the allegations above, inclusive, as though fully set forth herein.

114. T-Mobile is a "person" within the meaning of the Washington Consumer Protection Act ("CPA").

115. T-Mobile's conduct is unfair or deceptive within the meaning of the CPA. T-Mobile's failure to properly safeguard Plaintiff's and the Class's CPI and CPNI was unfair and deceptive because it allowed third parties to access and use T-Mobile customer accounts that



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

should have been accessible only to the customer and that customers reasonably expected to be secure.

116. T-Mobile's conduct is also unfair because it is illegal under the FCA, SCA, and CFAA, as alleged above.

117. T-Mobile's sale of cellular services to Plaintiff and Class members occurred in trade or commerce within the meaning of the CPA.

118. T-Mobile's conduct is capable of injuring a substantial portion of the public.

119. T-Mobile's conduct impacts the public interest because it has injured many cell service subscribers in Washington and throughout the United States and has the capacity to injure many more. Moreover, despite T-Mobile's knowledge of SIM swap scams occurring frequently with its customers, it has continued to fail to implement reasonable measures to stop such scams.

120. As a direct and proximate result of T-Mobile's unfair or deceptive acts or practices, Plaintiff and the Class have suffered an injury in fact and lost money.

121. Plaintiff and the Class are therefore entitled to damages, including actual damages, treble damages, attorneys' fees, and costs of suit.

122. Plaintiff and that Class are also entitled to injunctive relief.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

C. Actual and statutory damages;

D. Injunctive relief;

E. Prejudgment and post-judgment interest;



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

F. Reasonable attorneys' fees and costs of the action; and

G. Such other relief as this Court shall deem just and proper.

**VII. JURY DEMAND**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

RESPECTFULLY SUBMITTED AND DATED this 27th day of February, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com

By: /s/Adrienne D. McEntee, WSBA #34061
Adrienne D. McEntee, WSBA #34061
Email: amcentee@terrellmarshall.com

By: /s/Elizabeth A. Adams, WSBA #49175
Elizabeth A. Adams, WSBA #49175
Email: eadams@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Joseph A. Fitapelli, *Pro Hac Vice forthcoming*
Email: jfitapelli@fslawfirm.com
Frank J. Mazzaferro, *Pro Hac Vice forthcoming*
Email: fmazzaferro@fslawfirm.com
FITAPELLI & SCHAFFER, LLP
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Proposed Class*