THE HONORABLE JOHN H. CHUN

1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

8

EMAN BAYANI, individually and on behalf of all others similarly situated,

Case No. 2:23-cv-00271-JHC

9

Plaintiff,

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

10

vs.

11

T-MOBILE USA, INC.,

**NOTE ON MOTION CALENDAR:**
JUNE 2, 2023

12

Defendant.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Case No. 2:23-cv-00271-JHC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND............................................................................. 1

        A.      SIM swap scams........................................................................... 1

        B.      Plaintiff's experience with T-Mobile ........................................... 2

        C.      T-Mobile's role in Plaintiff's harm ............................................. 3

III.    ARGUMENT AND AUTHORITY .................................................................... 4

        A.      T-Mobile's Terms and Conditions do not bar Plaintiff's claims............................. 4

                1.      The Court should decline to incorporate the Terms and
                        Conditions by reference............................................... 4

                2.      Plaintiff's claims are not time-barred by the Terms and
                        Conditions...................................................................... 6

                        a.      T-Mobile has not shown that Plaintiff ever assented to
                                the Terms and Conditions ........................................ 6

                        b.      The shortened limitations period is unconscionable and
                                should not be enforced.................................................. 8

        B.      Plaintiff adequately pleads a claim under the Federal Communications
                Act ................................................................................................ 10

                1.      Plaintiff's CPNI was accessed by hackers and caused harm .................... 10

                2.      Plaintiff may bring a private claim pursuant to Section 201(b)................. 12

        C.      Plaintiff adequately pleads claims for negligence and negligent
                supervision ................................................................................. 12

                1.      T-Mobile committed an affirmative act ................................... 13

                2.      The "independent duty" doctrine does not bar Plaintiff's
                        negligence claims.......................................................... 14

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

D.     Plaintiff adequately pleads a claim under the Stored Communications
Act ................................................................................................ 15

1.     T-Mobile "knowingly" disclosed the "contents" of
communications ................................................................ 15

2.     Plaintiff sufficiently alleges the other elements of an SCA claim ............ 16

E.     Plaintiff adequately pleads a claim under the Computer Fraud and
Abuse Act ..................................................................................... 17

1.     Plaintiff sufficiently alleges that T-Mobile violation Section
1030(a)(5)(A) ............................................................... 17

2.     Plaintiff alleges that T-Mobile acted "without authorization" ................ 18

3.     Plaintiff alleges a cognizable loss ............................................. 19

F.     Plaintiff adequately pleads a claim under the Washington Consumer
Protection Act ................................................................................. 20

1.     Plaintiff does not allege a per se CPA violation ...................................... 20

2.     Plaintiff has sufficiently alleged unfair acts or practices .......................... 20

3.     Plaintiff has sufficiently alleged deceptive acts or practices .................. 21

G.     Should the Court determine that any of Plaintiff's claims are
inadequately pleaded, Plaintiff requests leave to amend his allegations ........... 22

IV.    CONCLUSION ................................................................................. 23

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### FEDERAL CASES

4
5
*Al-Safin v. Circuit City Stores, Inc.*,
No. C99–1953P, 2003 WL 25738603 (W.D. Wash. Mar. 7, 2003) ................................. 9

6
7
*Alvarez v. T-Mobile USA, Inc.*,
No. CIV. 2:10–2373 WBS GGH, 2011 WL 6702424 (E.D. Cal. Dec. 21, 2011)................. 7

8
9
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................... 4

10
*Baker v. Riverside Cnty. Office of Educ.*,
584 F.3d 821 (9th Cir. 2009) ...................................... 4

11
12
*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ...................................... 4

13
14
*Berry v. Transdev Servs., Inc.*,
No. C15-1299-RAJ, 2017 WL 1364658 (W.D. Wash. Apr. 14, 2017) ............................ 5

15
16
*Buckley v. Santander Consumer USA, Inc.*,
No. C17-5813 BHS, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) ......................... 14

17
18
*Carideo v. Dell, Inc.*,
706 F. Supp. 2d 1122 (W.D. Wash. 2010) ................................... 22

19
20
*Daymon Worldwide Inc. v. S.C. Johnson & Son Inc.*,
No. C06-1322-JCC, 2007 WL 9776405 (W.D. Wash. Jan. 25, 2007)............................ 6

21
22
*Desertrain v. City of L.A.*,
754 F.3d 1147 (9th Cir. 2014) ...................................... 22

23
*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................... 22

24
25
*Foster v. Kosseff*,
No. 11-CV-5069-TOR, 2013 WL 147822 (E.D. Wash. Jan. 14, 2013) ............................ 5

26
27
*Garcia v. City of Laredo, Tex.*,
702 F.3d 788 (5th Cir. 2012) ...................................... 5

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - iii
Case No. 2:23-cv-00271-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*,
   550 U.S. 45 (2007)   ................................................................. 12

*Griggs v. Pace Am. Group, Inc.*,
   170 F.3d 877 (9th Cir. 1999) ................................................. 22

*Grigsby v. Valve Corp.*,
   No. C12-0553JLR, 2013 WL 12310666 (W.D. Wash. Mar. 18, 2013).......................... 22

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................. 6

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ................................................ 4

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................... 17

*McKee v. Audible, Inc.*,
   No. CV 17–1941–GW(Ex), 2017 WL 4685039 (C.D. Cal. July 17, 2017) ....................... 9

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ............................................... 22

*Nauman v. Gen. Motors LLC*,
   No. C21-5150 BHS, 2021 WL 4502666 (W.D. Wash. Oct. 1, 2021) ........................... 22

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 954 (N.D. Cal. 2014) ....................................... 20

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ................................................ 22

*Patnode v. HCC Life Ins. Co. DBA HCC Med. Ins. Servs., LLC*,
   No. 2:15-824-BJR, 2016 WL 3597778 (W.D. Wash. July 5, 2016)................................. 5

*QVC, Inc. v. Resultly, LLC*,
   159 F. Supp. 3d 576 (E.D. Penn. 2016)....................................... 17

*Ross v. AT&T Mobility, LLC*,
   No. 19-cv-06669-JST, 2020 WL 9848766 (N.D. Cal. May 14, 2020)................11, 13, 19

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Street v. Amazon.com Servs., LLC,*
    No. 2:21-cv-0912-BJR, 2022 WL 834018 (W.D. Wash. Mar. 21, 2022) ...................... 21

*Sunbelt Rentals, Inc. v. Victor,*
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........................................................... 16

*Terpin v. AT&T Mobility, LLC,*
    No. 2:18-cv-06975-ODW (KSx), 2020 WL 883221 (C.D. Cal. Feb. 24, 2020) ............... 11

*Terpin v. AT&T Mobility, LLC,*
    No. 2:18-cv-06975-ODW (KSx), 2023 WL 2839068 (C.D. Cal. Mar. 28, 2023) ............ 11

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004) ..................................................................... 17

*Veridian Cred. Union v. Eddie Bauer, LLC,*
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) ..................................................... 14

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ..................................................................... 21

*William Insulation Co. Inc. v. JH Kelly LLC,*
    No. C21-5083 BHS, 2021 WL 1894092 (W.D. Wash. May 11, 2021) ........................... 5

*Williams v. AT&T Mobility, LLC,*
    No. 5:19-cv-475-BO, 2020 WL 1492803 (E.D.N.C. Mar. 25, 2020) ....................... 13, 15

*Zwicker v. Gen. Motors Corp.,*
    No. C07-0291-JCC, 2007 WL 5309204 (W.D. Wash. July 26, 2007) ........................... 22

**STATE CASES**

*Adler v. Fred Lind Manor,*
    153 Wn.2d 331, 103 P.3d 773 (2004) ......................................................... 8, 9

*Eastwood v. Horse Harbor Found., Inc.,*
    170 Wn.2d 380, 241 P.3d 1256 (2010) ..................................................... 14, 15

*Elcon Constr., Inc. v. E. Wash. Univ.,*
    174 Wn.2d 157, 273 P.3d 965 (2012) ......................................................... 14

*Eng v. Specialized Loan Servicing,*
    20 Wn. App. 2d 435, 500 P.3d 171 (2021) ..................................................... 21

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Gandee v. LDL Freedom Enters., Inc.,*
        176 Wn.2d 598, 293 P.3d 1197 (2013) ........................................................ 8

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
        105 Wn.2d 778, 719 P.2d 531 (1986) ........................................................ 20

*Johnson v. Nasi,*
        50 Wn.2d 87, 309 P.2d 380 (1957) ............................................................ 6

*Klem v. Wash. Mut. Bank,*
        176 Wn.2d 771, 295 P.3d 1179 (2013) ...................................................... 20

*Magney v. Lincoln Mut. Sav. Bank,*
        34 Wn. App. 45, 659 P.2d 537 (1983) ....................................................... 20

*McKee v. AT&T Corp.,*
        164 Wn.2d 372, 191 P.3d 845 (2008) ...................................................... 6, 8

*Meadow Owners Ass'n v. Plateau 44 II, LLC,*
        139 Wn. App. 743, 162 P.3d 1153 (2007) ................................................... 6

*Robb v. City of Seattle,*
        176 Wn.2d 427, 295 P.3d 212 (2013) .................................................. 13, 14

*State v. Kaiser,*
        161 Wn. App. 705, 254 P.3d 850 (2011) ................................................... 21

*Tadych v. Noble Ridge Constr., Inc.,*
        200 Wn.2d 635, 519 P.3d 199 (2022) ...................................................... 8, 9

*Van Inv. Assocs. v. Hamilton,*
        125 Wn.2d 120, 881 P.2d 1035 (1994) ....................................................... 7

*Weiss v. Lonnquist,*
        153 Wn. App. 502, 224 P.3d 787 (2009) ..................................................... 6

*Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima,*
        122 Wn.2d 371, 858 P.2d 245 (1993) ......................................................... 7

*Zuver v. Airtouch Commc'ns, Inc.,*
        153 Wn.2d 293, 103 P.3d 753 (2004) ......................................................... 9

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................... 21

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 4

Fed. R. Civ. P. 15(a)........................................................................................... 22

**FEDERAL STATUTES**

47 U.S.C. § 222(a) ............................................................................................. 12

47 U.S.C. § 222(b) ............................................................................................. 12

18 U.S.C. § 1030(a)(5)(A) .................................................................................. 17

18 U.S.C. § 1030(a)(5)(C) .................................................................................. 18

18 U.S.C. § 1030(e)(8) ...................................................................................... 19

18 U.S.C.§ 1030(e)(11) ..................................................................................... 19

18 U.S.C. § 1030(g) ........................................................................................... 19

**FEDERAL REGULATIONS**

47 C.F.R. § 64.2010 ........................................................................................... 12

47 C.F.R. § 64.2010(a) ................................................................................. 10, 12

47 C.F.R. § 64.2010(b)-(d) ................................................................................ 12

**OTHER AUTHORITIES**

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1216 (2004) ........................................................ 17

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## I.     INTRODUCTION

T-Mobile's motion to dismiss Plaintiff Eman Bayani's complaint employs a kitchen-sink approach to avoiding liability in this case. But T-Mobile's motion glosses over three key issues. First, Plaintiff doesn't bring claims rooted in contract, and T-Mobile's attempts to escape its obligations under state and federal law by pointing to the contract should be rejected.

Second, even if considered by the Court, the Terms and Conditions ("T&Cs") that T-Mobile attempts to invoke are the very definition of a one-sided contract of adhesion, in which T-Mobile attempts to insulate itself from liability in every way possible. The T&Cs, which T-Mobile fails to explain when or how Mr. Bayani purportedly reviewed or assented to (and on which none of his claims rely), specifically disclaim T-Mobile's liability for basically everything it might do to harm Plaintiff. The T&Cs attempt to further limit the time period, types of damages, and methods by which a consumer can bring a claim against T-Mobile, without any countervailing benefits provided to consumers. Such terms should not be enforced.

Finally, lurking throughout its substantive arguments is an attempt by T-Mobile to distance itself from the harm Plaintiff incurred, claiming that such harm was caused by third-party criminals. T-Mobile ignores the fact that <u>a T-Mobile employee</u> effectuated the SIM swaps at issue in this case. In other words, T-Mobile was not a passive player in the chain of events that led to Plaintiff's losses; rather, T-Mobile affirmatively performed the SIM swaps that allowed third-party criminals to access and steal Plaintiff's money. For these reasons, and those discussed below, Plaintiff requests the Court deny T-Mobile's motion to dismiss.

## II.     FACTUAL BACKGROUND

**A.     SIM swap scams.**

According to the Federal Trade Commission ("FTC"), a SIM swap scam is conducted as follows: First, the scammer contacts a cell phone service provider (such as T-Mobile), saying the victim's phone was lost or damaged. Complaint, ECF No. 1, ¶ 3. Then the scammer asks the cell service provider to activate a new SIM card connected to the victim's phone number on a new phone — a phone the scammer owns. *Id.* Failing to exercise due diligence or properly

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 1
Case No. 2:23-cv-00271-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

investigate, the provider then improperly activates the new SIM card, allowing the scammer to receive all of the victim's text messages, calls, and data on the new phone. *Id.* Once a scammer has connected their SIM card with the victim's phone number, the scammer is able to access anything that was previously accessible to the victim through their cell phone. *Id.* ¶ 4. "Armed with your log in credentials, the scammer could log in to your bank account and steal your money, or take over your email or social media accounts. And they could change the passwords and lock you out of your accounts." *Id.*

**B.      Plaintiff's experience with T-Mobile.**

Plaintiff became a T-Mobile/MetroPCS subscriber on December 11, 2021. *Id.* ¶ 20. Eight days later, on December 19, 2021, Plaintiff lost access to his account when a T-Mobile employee transferred control of Plaintiff's account from Plaintiff's SIM card to a scammer's SIM card. *Id.* ¶ 21. On December 21, 2021, Plaintiff went to a MetroPCS store to address the issue. *Id.* ¶ 22. His access was restored. *Id.*

Approximately two hours later, Plaintiff again lost access to his accounts when T-Mobile again transferred control of Plaintiff's accounts to a scammer's SIM card. *Id.* The next day, Plaintiff went back to the same MetroPCS store he had visited the day before. *Id.* ¶ 23. The employees at the store were unable to assist him in restoring access at that time because his security codes, passwords, and PINs were not working. *Id.* The next day, Plaintiff's wife returned to the original location at which Plaintiff obtained his T-Mobile account and paid a service charge. *Id.* ¶ 24. Service was again temporarily restored to Plaintiff's phone. *Id.*

The very next day, Plaintiff's account access was transferred to scammers via a SIM swap for the third time. *Id.* ¶ 25. He visited a different MetroPCS store to attempt to restore access. *Id.* The store employee told him to contact customer service. *Id.* He did so, and after the customer service representative spoke with the store employee to verify Plaintiff's identity and Plaintiff paid two charges on his account, his service was again restored. *Id.* ¶ 26.

On December 27, 2021, Plaintiff went to a MetroPCS corporate store in Dallas, Texas to try to figure out what had happened. *Id.* ¶ 27. Plaintiff was shown that several unlawful SIM

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 2
Case No. 2:23-cv-00271-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  swaps had occurred. *Id.* During the multiple unlawful SIM swaps, scammers were able to access

2  Plaintiff's email accounts, banking accounts, and Coinbase account. *Id.* ¶ 29. Scammers took

3  approximately $21,000 of cash reserves in Plaintiff's Coinbase account to purchase Bitcoin and

4  transfer it out, transferred approximately $2,700 from Plaintiff's Bank of America account to

5  Plaintiff's Coinbase account to purchase Bitcoin and transfer it out, and sold approximately

6  $378 of cryptocurrency in Plaintiff's Coinbase account to purchase Bitcoin and transfer it out.

7  *Id.* Scammers were able to access these accounts because of the unlawful access T-Mobile

8  granted the scammers to Plaintiff's account by effectuating the SIM swap. *Id.* ¶ 30. By having

9  access to Plaintiff's account, scammers could use text verification to reset Plaintiff's passwords

10  on his email, banking, and Coinbase accounts and to withdraw funds from those accounts. *Id.*

11  The unauthorized activity on Plaintiff's T-Mobile account was later confirmed by T-Mobile. *Id.* ¶

12  31.

13  **C.      T-Mobile's role in Plaintiff's harm.**

14           The very nature of SIM swap scams requires the active participation of the wireless

15  carrier in effectuating the SIM swap. Here, Plaintiff alleges that "[u]sing T-Mobile's services,

16  scammers convinced <u>T-Mobile to transfer access to Plaintiff's phone number from his</u>

17  <u>registered SIM card to the scammer's SIM card.</u>" *Id.* ¶ 2 (emphasis added). Without exercising

18  due diligence, <u>the service provider "improperly activates the new SIM card,</u> allowing the

19  scammer to receive all the victim's text messages, calls, and data on [the scammer's] phone."

20  *Id.* ¶ 3 (emphasis added).

21           T-Mobile has long been aware of the security risks presented by its weak user credential

22  structures and procedures. *Id.* ¶ 46. Aside from warnings from the FTC, T-Mobile has faced

23  multiple lawsuits by customers alleging the same violations of law as Plaintiff. *Id.* ¶ 7. Despite

24  this, T- Mobile did not use readily available security measures to prevent or limit such attacks.

25  *Id.* ¶¶ 43-49. In that regard, T-Mobile failed to provide reasonable and appropriate security to

26  prevent unauthorized access to Plaintiff's and other customers' accounts. *Id.* ¶ 43. Under the

27  inadequate procedures implemented by T-Mobile, unauthorized persons, including T-Mobile's

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 own officers, agents, and employees, can authenticate, access, share, and make changes to

2 customers' information without customer permission. *Id.* ¶ 40.

3      As a result of T-Mobile's faulty security practices, scammers easily gained access to

4 Plaintiff's account and used that information to gain access to sensitive information, including

5 his bank accounts and virtual currency accounts. *Id.* ¶¶ 47, 51.

6 **III.     ARGUMENT AND AUTHORITY**

7      The Court should not dismiss under Rule 12(b)(6) unless the complaint fails "to state a

8 claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss,

9 a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

10 that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

11 marks omitted). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable

12 legal theory or insufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police*

13 *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Courts accept all facts alleged in the complaint as true

14 and draws all inferences in the light most favorable to the non-moving party. *Baker v. Riverside*

15 *Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

16 **A.     T-Mobile's Terms and Conditions do not bar Plaintiff's claims.**

17      1.     <u>The Court should decline to incorporate the Terms and Conditions by reference.</u>

18      Throughout its motion, T-Mobile repeatedly invokes the T&Cs, arguing that they govern

19 here. But the rule permitting incorporation by reference is limited. The Court may consider

20 documents not attached to the complaint in ruling on a Rule 12 motion only when the plaintiff's

21 claim depends on the contents of the document and the parties do not dispute the authenticity

22 of the document, even though the plaintiff does not explicitly allege the contents of that

23 document in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

24      Here, none of Plaintiff's claims rely on the T&Cs or its terms and, as a result, the T&Cs

25 should not be incorporated by reference into the complaint. Plaintiff brings no claim for breach

26 of contract. Nor does Plaintiff "deliberately omit" references to the T&Cs, which are not

27 relevant to Plaintiff's claims. Instead, Plaintiff alleges that T-Mobile violated duties imposed

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 4
Case No. 2:23-cv-00271-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  upon it by state and federal law (not by contract). Thus, contrary to T-Mobile's assertions, the

2  T&Cs are not "integral to" the complaint. Plaintiff refers explicitly to the T&Cs only once: to

3  indicate that the choice of law and venue clauses contained therein <u>do not</u> apply to this case

4  "because Plaintiff's claims <u>do not arise out of that agreement</u>." Complaint ¶ 19 (emphasis

5  added).[1] The only other places where the T&Cs are even arguably mentioned are at paragraph

6  20, where Plaintiff alleges that he entered into a wireless service contract with T-Mobile, and at

7  paragraph 32, where Plaintiff alleges that he opted out of T-Mobile's arbitration agreement.

8  *See id.* ¶¶ 20, 32. None of the remaining allegations or claims refer to or rely on the contractual

9  relationship between the parties. *See Foster v. Kosseff*, No. 11-CV-5069-TOR, 2013 WL 147822,

10  at *4 (E.D. Wash. Jan. 14, 2013) ("Unlike claims for breach of an insurance contract, …

11  [p]laintiff's negligence claim does not necessarily rely upon the content of a specific document.

12  In fact, [p]laintiff could theoretically prove the elements of her negligence claim (i.e., duty,

13  breach, causation and damages) exclusively through witness testimony without introducing the

14  [document] at all.").

15      Where courts have incorporated a contract by reference, it is almost always in the

16  context of a breach of contract claim. In other words, where the specific terms of the parties'

17  contract create the duties and breaches alleged, it is proper to consider the contract on a

18  motion to dismiss. *See, e.g., William Insulation Co. Inc. v. JH Kelly LLC*, No. C21-5083 BHS, 2021

19  WL 1894092, at *1 n.1 (W.D. Wash. May 11, 2021) (considering contract at pleadings stage

20  because claims included one for breach of contract and parties' duties arose entirely out of

21  their contract); *Berry v. Transdev Servs., Inc.*, No. C15-1299-RAJ, 2017 WL 1364658, at *2 (W.D.

22  Wash. Apr. 14, 2017) (considering contracts at pleadings stage where cross-claims involved

23  breach of contract); *Patnode v. HCC Life Ins. Co. DBA HCC Med. Ins. Servs., LLC*, No. 2:15-824-

24  BJR, 2016 WL 3597778, at *2 (W.D. Wash. July 5, 2016) (considering health insurance policy

25

26  [1] T-Mobile does not appear to disagree with this allegation. In fact, T-Mobile's invocation of <u>Washington</u> law in
support of its arguments regarding the contractual limitations period, rather than Illinois law, confirms that T-
27  Mobile agrees that this dispute falls outside the scope of the T&Cs.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 5
Case No. 2:23-cv-00271-JHC

documents at pleadings stage where plaintiff alleged that insurer breached agreement by denying her claims). Here, Plaintiff does not assert a breach of contract claim, nor do any of the terms of the contract bear on his claims. Plaintiff's claims stem from duties owed by T-Mobile to Plaintiff that are rooted in statute and common law, not contract. As a result, incorporation of the contract at this stage is inappropriate.

At most, T-Mobile's arguments indicate that there may be <u>defenses</u> to Plaintiff's claims contained in the contract. But this is ordinarily not a basis for considering the contract at the pleadings stage. "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Daymon Worldwide Inc. v. S.C. Johnson & Son Inc.*, No. C06-1322-JCC, 2007 WL 9776405, at *1-2 (W.D. Wash. Jan. 25, 2007) (refusing to consider at pleadings stage document that defendant alleged terminated parties' agreement because it was not "integral to *plaintiff's complaint*" even if it might go to "the ultimate merits of the complaint") (emphasis in original). Thus, T-Mobile's desire to introduce the contract to support its potential claimed defenses should be rejected at this stage.

2.    <u>Plaintiff's claims are not time-barred by the Terms and Conditions.</u>

a.    *T-Mobile has not shown that Plaintiff ever assented to the Terms and Conditions.*

"The burden of proving the existence of a contract is on the party asserting its existence." *Weiss v. Lonnquist*, 153 Wn. App. 502, 511, 224 P.3d 787 (2009) (quoting *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 765, 162 P.3d 1153 (2007)); *see also Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (1957) ("The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention."). While "parties can shorten the applicable statute of limitations by contract unless a shorter time frame is unreasonable or prohibited by statute or public policy," *McKee v. AT&T Corp.*, 164 Wn.2d 372, 399, 191 P.3d 845 (2008), in

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   order for such a shortened period to be enforceable, the parties must have actually assented to

2   it. *See Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388,

3   858 P.2d 245 (1993) ("Mutual assent is required for the formation of a valid contract."). The

4   existence of mutual assent is a question of fact. *Sea-Van Inv. Assocs. V. Hamilton*, 125 Wn.2d

5   120, 126, 881 P.2d 1035 (1994).

6        Here, T-Mobile cannot meet its burden. It provides no evidence that Plaintiff was ever

7   presented with or assented to the T&Cs. And contrary to T-Mobile's representations regarding

8   Plaintiff's allegations, Plaintiff does not "admit" that he entered into the T&Cs. First, while he

9   alleges that he entered into <u>a</u> contract with T-Mobile for the provision of wireless cellular

10  service, he does not allege that he agreed to <u>any</u> T&Cs, let alone the specific version that T-

11  Mobile attaches to its motion. *See* Complaint ¶ 20 ("Plaintiff entered into a contract with T-

12  Mobile for wireless cellular service."). Second, he alleges only that he opted out of T-Mobile's

13  <u>arbitration provision</u>. *See id.* at ¶ 32 ("Plaintiff opted out of T-Mobile's arbitration agreement.").

14  This allegation does not establish that Plaintiff ever read or assented to any of the terms in the

15  T&Cs. In fact, Plaintiff figured out how to "opt out" of arbitration by performing an internet

16  search regarding how to sue T-Mobile, not from any review of or assent to the T&Cs.[2] T-

17  Mobile's submission of its T&Cs to this Court, without more, cannot establish the mutual assent

18  that would be required to enforce its terms. *See Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10–

19  2373 WBS GGH, 2011 WL 6702424, at *9 (E.D. Cal. Dec. 21, 2011) (finding disputed factual

20  question of whether parties formed an agreement to arbitrate precluded dismissal).

21       Because T-Mobile cannot establish that Plaintiff assented to the T&Cs, any arguments T-

22  Mobile makes on the basis of that document, including its claim that it "warned" Plaintiff about

23  the possibility his data would not be secure and its attempt to impose a shortened limitations

24  period on Plaintiff's claims, is not a valid basis for dismissal of Plaintiff's claims. T-Mobile should

25  _____

26  [2] This allegation is not contained in Plaintiff's complaint because it is not essential to his claims. However, should
    the Court deem such allegations necessary, Plaintiff specifically requests leave to amend to allege facts regarding
    his initial sign-up with T-Mobile, his not being presented with the T&Cs at the time of contracting, and the
27  circumstances under which he learned of the arbitration provision and opted out.

1   not be permitted to enforce a shortened limitations period against Plaintiff that he never

2   agreed to.

3              b.       *The shortened limitations period is unconscionable and should not be
                        enforced.*
4

5          Even if T-Mobile could show that Plaintiff agreed to the T&Cs such that it constitutes a

6   valid contract between Plaintiff and T-Mobile (and it has not done so), the limitation of liability

7   provision, and in particular the shortened statute of limitations, is unconscionable and should

8   not be enforced.

9          The question of whether a contract is unconscionable is a question of law for the Court

10  to decide. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344, 103 P.3d 773 (2004). "[C]ontractual

11  provisions that are unconscionable are not enforceable." *Id.* In Washington, "[e]ither

12  substantive or procedural unconscionability is sufficient to void a contract." *Tadych v. Noble*

13  *Ridge Constr., Inc.*, 200 Wn.2d 635, 641, 519 P.3d 199 (2022) (citing *Gandee v. LDL Freedom*

14  *Enters., Inc.*, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013)).

15         To begin with, any shortening of the statute of limitations on a Washington Consumer

16  Protection Act claim is "harsh and one-sided," substantively unconscionable, and therefore

17  unenforceable. *McKee*, 164 Wn.2d at 399. T-Mobile impliedly acknowledges *McKee*, as it does

18  not argue that Plaintiff's CPA claim is time-barred. But the reasoning of *McKee* extends beyond

19  just CPA claims. In that case, the Washington Supreme Court further described shortened

20  statutes of limitations as potentially unconscionable "when imposed on a consumer in a

21  contract of adhesion for a basic consumer service such as long distance telephone service." *Id.*

22  That is exactly the situation in this case: T-Mobile is attempting to impose shortened statutes of

23  limitations on Plaintiff and other consumers. T-Mobile's T&Cs are a contract of adhesion; not

24  only are they presented on a take-it-or-leave-it basis, but Plaintiff wasn't even required to

25  assent to them prior to activating his service. Finally, Plaintiff's T-Mobile service contract is for

26  "a basic consumer service," as cell phones have largely replaced traditional "long distance

27  telephone service" for most consumers. This Court should not allow T-Mobile to wield its far

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 8
Case No. 2:23-cv-00271-JHC

1   superior bargaining power to absolve it of its obligations under state and federal law by unfairly

2   shortening the applicable statutes of limitations for his claims. *See Adler*, 153 Wn.2d at 357

3   (finding limitations period that cut statute of limitations in half unconscionable because it

4   provided the drafter with "unfair advantages").

5          This conclusion is further supported by general unconscionability principles. The

6   Washington Supreme Court has explained that "[a] contract provision becomes substantively

7   unconscionable when it eliminates otherwise established statutory rights and is one sided,

8   benefiting the contract drafter, is also not prominently set out in the contract, is not negotiated

9   or bargained for, and provides no benefit to the affected party." *Tadych*, 200 Wn.2d at 645-46.

10  All of these things are true for the limitation of liability provision in the T&Cs T-Mobile attaches

11  to its motion, and specifically the shortened statute of limitations portion of it. First, the

12  limitation of liability provision eliminates otherwise established statutory rights, including the

13  right to file suit within each claim's respective statute of limitations. *See* Decl. of Jennifer

14  Chung, Ex. A, ECF No. 20-1, at 6. The provision is also quite one-sided, disallowing damages for a

15  number of specific claims that consumers would have against T-Mobile, but that T-Mobile

16  would not have against consumers (such as "damages arising out of unauthorized access or

17  charges to your Account"). *Id.* In other words, the limitation of liability provision benefits only

18  the drafter (T-Mobile). *See Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 317-18, 103 P.3d

19  753 (2004) (finding limitation of liability and damages provision substantively unconscionable

20  because it "heavily favor[ed]" the drafter); *McKee v. Audible, Inc.*, No. CV 17–1941–GW(Ex),

21  2017 WL 4685039, at *13 (C.D. Cal. July 17, 2017) (applying Washington law to find limitation of

22  liability provision substantively unconscionable). And it provides no benefit to consumers. In

23  short, it is the very definition of a one-sided contract of adhesion and should not be enforced.

24  *See Al-Safin v. Circuit City Stores, Inc.*, No. C99–1953P, 2003 WL 25738603, at *4 (W.D. Wash.

25  Mar. 7, 2003) (finding adhesion contract substantively unconscionable where it contained a

26  shortened statute of limitations, liability limitations, and other one-sided terms). Therefore, the

27  limitation of liability provision is substantively unconscionable.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 9
Case No. 2:23-cv-00271-JHC

1    The provision is also procedurally unconscionable. It appears near the very end of a six-

2    page fine print document. Beginning on the first page of the T&Cs is a section entitled **HOW DO**

3    **I RESOLVE DISPUTES WITH T-MOBILE?**. *See* Chung Decl., Ex. A. The paragraphs that follow

4    describe arbitration and other dispute resolution procedures. *See id.* But the limitation of

5    liability provision is not contained there. Instead, it is buried near the end of a later section

6    entitled **OTHER TERMS REGARDING DISPUTE RESOLUTION**. *See id.* In other words, the

7    shortened statute of limitations provision is buried as deep into the contract as possible,

8    ensuring that it is unlikely to be seen or reviewed by consumers (even savvy consumers who

9    figure out how to opt out of arbitration). The limitation of liability provision is not negotiated or

10   bargained for; instead, it is drafted by T-Mobile and included in the T&Cs on a take-it-or-leave-it

11   basis. This provides further support for not enforcing it against Plaintiff here.

12   **B.    Plaintiff adequately pleads a claim under the Federal Communications Act.**

13   Plaintiff's claim under the Federal Communications Act is adequately pleaded. Under

14   the FCA's implementing regulations, "[t]elecommunications carriers must take reasonable

15   measures to discover and protect against attempts to gain unauthorized access to CPNI." 47

16   C.F.R. § 64.2010(a). Further, "[t]elecommunications carriers must properly authenticate a

17   customer prior to disclosing CPNI based on customer-initiated telephone contact, online

18   account access, or an in-store visit." *Id.* T-Mobile failed to adhere to these regulations, resulting

19   in the disclosure of Plaintiff's CPNI and harm to Plaintiff.

20       1.    Plaintiff's CPNI was accessed by hackers and caused harm.

21   T-Mobile claims that Plaintiff has not alleged any damages flowing from any disclosure

22   of CPNI. T-Mobile's argument vacillates between claiming (1) that no CPNI was disclosed at all

23   and (2) that any disclosure of CPNI did not result in harm. As to the first point, T-Mobile

24   specifically acknowledged that during each of the SIM swaps, "an unknown party would have

25   had access to Customer Proprietary Network Information ("CPNI")." *See* ECF No. 1-1. T-Mobile's

26   argument that CPNI was not disclosed or made accessible to the scammers in this case should

27   be rejected.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 10
Case No. 2:23-cv-00271-JHC

As to the second point, Plaintiff alleges that he suffered losses as result of the disclosure of his CPNI. *See* Complaint ¶ 74. He also pleads details regarding how the SIM swap occurred and how his CPNI was disclosed. At the pleadings stage, this is all that is necessary. Indeed, Plaintiff cannot be expected to know, prior to discovery, the exact nature and extent of who accessed what information and how that information may have been used to harm him. *See Ross v. AT&T Mobility, LLC*, No. 19-cv-06669-JST, 2020 WL 9848766, at *11 (N.D. Cal. May 14, 2020) (finding allegations regarding sequence of events in alleged SIM swap "sufficient to raise the reasonable inference that the SIM swap performed by the AT&T employee was the proximate cause of the theft of his funds"); *see also Terpin v. AT&T Mobility, LLC*, No. 2:18-cv-06975-ODW (KSx), 2020 WL 883221, at *3 (C.D. Cal. Feb. 24, 2020) (finding that, at pleadings stage, the plaintiff was not required "to reconstruct the precise sequence of the hack" to plead a plausible claim).

The *Terpin* case upon which T-Mobile relies is readily distinguishable. First, the opinion in that case on which T-Mobile relies was decided <u>at summary judgment</u> when, after discovery, the court determined that "the evidence establishe[d] that the SIM swap disclosed only access to the 310 number, and only on a going forward basis." *Terpin v. AT&T Mobility, LLC*, No. 2:18-cv-06975-ODW (KSx), 2023 WL 2839068, at *7 (C.D. Cal. Mar. 28, 2023). Here, by contrast, the case is at the pleadings stage. Until Plaintiff is afforded discovery into the information that was accessible to the scammer and how the scammer used that information, it cannot be said that the access to CPNI, which T-Mobile has already admitted occurred, did not cause any harm. Indeed, the earlier *Terpin* decision, at the pleadings stage, found the allegations to be sufficient; it was only after discovery that the court dismissed the claim on the basis of evidence. Second, the court in *Terpin* found that "the SIM swap itself did not disclose CPNI." 2023 WL 2839068, at *7. By contrast, here T-Mobile <u>admitted</u> that the SIM swaps on Plaintiff's phone <u>did</u> disclose

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  CPNI (or at least make it accessible to the scammer). *See* ECF No. 1-1. Thus, Plaintiff's

2  allegations are sufficient to survive at the motion to dismiss stage.[3]

3      2.    <u>Plaintiff may bring a private claim pursuant to Section 201(b).</u>

4      T-Mobile relies on a single, out-of-circuit case from 1987 to argue that claims based on §

5  201(b)'s "unreasonable" act provision must first be pursued by the FCC, not by private litigants.

6  But where the FCC has properly issued implementing regulations based on § 201(b), a plaintiff

7  can bring claims based on a violation of such regulation. *See Global Crossing Telecomms., Inc. v.*

8  *Metrophones Telecomms., Inc.*, 550 U.S. 45, 54 (2007). In other words, the allegation that T-

9  Mobile violated an implementing regulation is sufficient to state a claim under § 201(b). *See id.*

10 ("[T]o violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the

11 statute.") (emphasis in original). Here, Plaintiff specifically alleges that "[t]elecommunications

12 carriers must properly authenticate a customer prior to disclosing CPNI based on customer-

13 initiated telephone contact, online account access, or an in-store visit." *See* Complaint ¶ 69; 47

14 C.F.R. § 64.2010(a). The regulations include specific requirements for disclosure of CPNI,

15 including methods for authentication of the customer prior to any disclosure, depending on

16 whether the customer is on the phone, online, or in person. *See* 47 C.F.R. § 64.2010(b)-(d).

17 Plaintiff alleges that T-Mobile failed to follow these regulations. *See* Complaint ¶¶ 33-46; 69-72.

18 Therefore, Plaintiff may bring a § 201(b) claim, premised on the violations of the implementing

19 regulations at 47 C.F.R. § 64.2010.

20 **C.    Plaintiff adequately pleads claims for negligence and negligent supervision.**[4]

21     The core of T-Mobile's argument that it was not negligent is that it cannot be held liable

22 for the acts of a third-party criminal. But this argument ignores that T-Mobile committed an

23

---

24 [3] Plaintiff concedes that the focus of the FCA is on CPNI, not the broader concept of CPI. But CPI (or customer
    proprietary information) is mentioned multiple times in the statute. First, 47 U.S.C. § 222(a) proclaims that "[e]very

25 telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to,
    … customers." Second, § 222(b) requires telecommunications carriers to use propriety information it obtains from

26 other carriers only for the purpose of providing telecommunications services.

27 [4] T-Mobile makes no distinction in its motion between these two claims. Thus, Plaintiff addresses them together.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 12
Case No. 2:23-cv-00271-JHC

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

affirmative act in performing the SIM swap that allowed the third-party criminal to harm

Plaintiff and thus owed a duty to protect Plaintiff from that harm.

1.   <u>T-Mobile committed an affirmative act.</u>

T-Mobile's argument against Plaintiff's negligence claims is its insistence that it

committed no affirmative act and thus owed no duty to Plaintiff to protect him from harm. But

as T-Mobile explains, there exists an "independent duty to protect against criminal acts of a

third party where the actor's own affirmative act creates or exposes another to the

recognizable high degree of risk of harm." *Robb v. City of Seattle*, 176 Wn.2d 427, 429-30, 295

P.3d 212 (2013).

T-Mobile is correct on the law, but incorrect on the facts. Here, Plaintiff alleges that T-

Mobile committed the affirmative act of "transfer[ring] access to Plaintiff's phone number from

his registered SIM card to the scammer's SIM card." Complaint ¶ 2. Performing this affirmative

act without instituting proper procedures to protect access to Plaintiff's information exposed

Plaintiff to the risk of a SIM swap scammer accessing his accounts and led directly to Plaintiff's

damages. As explained by several other courts, wireless carriers are active, not passive,

participants in SIM swap scams, and thus they owe a duty to protect their customers from harm

when performing such swaps. As one court succinctly describes it,

> [T]he criminal conduct involved in a SIM swap is not
> "independent," but is facilitated by the wireless carrier. Unlike a
> direct hack of data where the company may play a more passive
> role, SIM swaps are ultimately actualized by the wireless carrier. It
> is the company that effectuates the SIM card change.

*Williams v. AT&T Mobility, LLC*, No. 5:19-cv-475-BO, 2020 WL 1492803, at *4 (E.D.N.C. Mar. 25,

2020); *see also Ross*, 2020 WL 9848766, at *11 ("Ross alleges that an AT&T employee

performed an unauthorized SIM swap on his phone, which allowed the hacker to intercept his

calls and text messages and use two-factor authentication to change the passwords to his

accounts and ultimately access his financial and other accounts to steal his funds. These

allegations are sufficient to raise the reasonable inference that the SIM swap performed by the

AT&T employee was the proximate cause of the theft of his funds.").

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 13
Case No. 2:23-cv-00271-JHC

1       The cases T-Mobile cites regarding failure to protect data are inapposite. In both

2  *Veridian* and *Buckley*, the district courts found that corporate defendants owed no duty and

3  dismissed claims for negligence where hackers broke into data stored by the defendants

4  independently, without an affirmative act allowing the hacker access. *See Veridian Cred. Union*

5  *v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1158 (W.D. Wash. 2017) ("These allegations comprise

6  numerous omissions or nonfeasance on the part of Eddie Bauer, but they do not describe

7  misfeasance or any affirmative act 'that created a situation of peril' for Veridian.") (quoting

8  *Robb*, 176 Wn.2d at 434); *Buckley v. Santander Consumer USA, Inc.*, No. C17-5813 BHS, 2018 WL

9  1532671, at *5 (W.D. Wash. Mar. 29, 2018) (distinguishing between affirmative acts that

10  caused exposure and passive failure to maintain adequate security). Thus, T-Mobile owed a

11  duty to protect Plaintiff from the high risk of harm created by its affirmative act: the SIM swap

12  that it performed on his wireless number.

13       2.      The "independent duty" doctrine does not bar Plaintiff's negligence claims.

14       T-Mobile argues that Plaintiff's negligence claims must be dismissed based on the

15  "independent duty doctrine." The essence of this doctrine is that a party cannot recover in tort

16  for the breach of duties that stem <u>only</u> from the parties' contractual relationship. *See Eastwood*

17  *v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 395, 241 P.3d 1256 (2010) (discussing "harm that

18  implicates only the contract"). But the Washington Supreme Court has observed that it has

19  "applied the doctrine to a narrow class of cases, primarily limiting its application to claims

20  arising out of construction on real property and real property sales." *Elcon Constr., Inc. v. E.*

21  *Wash. Univ.*, 174 Wn.2d 157, 165, 273 P.3d 965 (2012). Indeed, the court went on to state that

22  in *Eastwood*, it had "directed lower courts not to apply the doctrine to tort remedies unless"

23  the Washington Supreme Court had already decided that it was applicable to a particular

24  situation. *Id.* T-Mobile can point to no case where the Washington Supreme Court has applied

25  the doctrine to a negligence claim outside of the real property context. As a result, this Court

26  likewise should not apply the doctrine to bar Plaintiff's claims.

27       Even if the Washington Supreme Court's failure to endorse application of the doctrine

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   to this circumstance were not definitive, an examination of the doctrine itself confirms that it

2   does not apply to Plaintiff's negligence claims here. As *Eastwood* explains, "the fact that an

3   injury is an economic loss or the parties also have a contractual relationship is not an adequate

4   ground, by itself, for holding that a plaintiff is limited to contract remedies." 170 Wn.2d at 388-

5   89. The test for application of the doctrine "is not simply whether an injury is an economic loss

6   arising from a breach of contract, but rather whether the injury is traceable also to a breach of

7   a tort law duty of care arising independently of the contract." *Id.* at 394.

8          Here, it is clear that T-Mobile's duty of care arises independent of any contract between

9   Plaintiff and T-Mobile. Several federal statutes govern the duties of wireless carriers to their

10  customers. The Washington Consumer Protection Act creates a duty for businesses operating in

11  Washington to engage in fair practices. And, as described above, T-Mobile owed a duty to

12  Plaintiff by virtue of its affirmative act of effectuating the SIM swap. T-Mobile's tort duty arises

13  from that act, not from any contract. *See Williams*, 2020 WL 1492803, at *6 (finding economic

14  loss rule did not bar negligence claims in SIM swap case because the plaintiff "was not seeking

15  to repackage a breach of contract claim for the deficient provision of wireless service" but

16  instead was "seeking to recover for tortious conduct where the harms proliferated to every

17  aspect of his life, well beyond his contractual relationship with" the wireless carrier). Thus, the

18  independent duty doctrine is no bar to Plaintiff's negligence claims.

19  **D.     Plaintiff adequately pleads a claim under the Stored Communications Act.**

20         1.      T-Mobile "knowingly" disclosed the "contents" of communications.

21         Plaintiff alleges that the SIM swap "allow[ed] the scammer to receive all of the victim's

22  text messages, calls, and data on the new phone." Complaint ¶ 3. By effectuating the SIM swap,

23  T-Mobile knew that it was providing access to the content of Plaintiff's text messages to a new

24  SIM card. Again, unlike the data breach case upon which T-Mobile relies, T-Mobile affirmatively

25  acted to disclose the contents of all text messages sent to Plaintiff's cell number.

26         Such disclosure was also "knowing." "The term knowingly means that the defendant

27  was aware of the nature of the conduct, aware of or possessing a firm belief in the existence of

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 15
Case No. 2:23-cv-00271-JHC

1   the requisite circumstances and an awareness of or a firm belief about the substantial certainty

2   of the result." H. R. Rep. 99-647 (1986). "The conduct in question is the act of disclosure." *Id.*

3   Here, T-Mobile knew that effectuating the SIM swap would disclose Plaintiff's communications.

4   Next, "[t]he result is that the contents have been provided to another person or entity." *Id.* T-

5   Mobile knew that the result of its actions was to provide access to the contents of Plaintiff's

6   texts and other information to another SIM card. Finally, "[t]he circumstances involved are that

7   the person involved provides electronic communication services to the public and that the

8   contents relate to a wire or electronic communication." *Id.* Clearly, T-Mobile provides electronic

9   communication services to the public (Complaint ¶¶ 12-13) and the contents divulged relate to

10  electronic communications, specifically text messages (Complaint ¶¶ 3, 43, 49).

11         2.       Plaintiff sufficiently alleges the other elements of an SCA claim.

12         T-Mobile also argues that for purposes of Section 2702(a)(1), Plaintiff failed to plead

13  that his information was divulged "while in electronic storage," rather than accessed from

14  "ordinary storage on [a party's] computers" or from the "primary means for accessing the

15  data." T-Mobile is mistaken. This is not a case like so many others, in which a party goes onto

16  another party's phone and takes data from the phone itself, which is where consumers typically

17  store data. *See, e.g., Garcia v. City of Laredo, Tex.*, 702 F.3d 788 (5th Cir. 2012) (involving

18  removal of cell phone from unlocked locker and physical access of text messages and images

19  found on phone); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014)

20  (allegation that defendant accessed text messages by reviewing messages on his iphone, rather

21  than through his cellular telephone provider, were insufficient under the SCA).

22         Here, T-Mobile divulged Plaintiff's data by granting access to data stored by T-Mobile via

23  the scammer's SIM card. In providing the scammer with a duplicate SIM card, T-Mobile gave the

24  scammer access to "Plaintiff's email accounts, banking accounts, and Coinbase account."

25  Complaint ¶ 29. The scammer did not have Plaintiff's phone and could not have accessed

26  Plaintiff's information if T-Mobile had not provided access to the duplicate SIM card that stored

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  it, which allowed the scammer "to use text verification to reset Plaintiff's passwords on his

2  email, banking, and Coinbase accounts and to withdraw funds from those accounts." *Id*. ¶ 30.

3        Finally, T-Mobile argues that it is an "electronic communication service" (ECS) and thus

4  should not be classified as a "remote computing service" (RCS), rendering Section 2702(a)(2)

5  inapplicable to it. Once again, T-Mobile is mistaken. T-Mobile ignores the fact that "remote

6  computing services and electronic communications services are often the same entities."

7  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1070 (9th Cir. 2004); *see also* Orin S. Kerr, *A User's Guide*

8  *to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L.

9  Rev. 1208, 1216 (2004) ("The same treatment exists for different copies of the same

10  communication: a provider can act as an ECS with respect to one copy of a communication, as

11  an RCS with respect to another copy, and as neither an ECS nor an RCS with respect to a third

12  copy."). Indeed, that it why Plaintiff brought claims under both Section 2702(a)(1) <u>and</u>

13  2702(a)(2)—because T-Mobile is both an RCS and an ECS, and "[w]hether an entity is acting as

14  an RCS or an ECS (or neither) is context dependent, and depends, in part, on the information

15  disclosed." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1023 (N.D. Cal. 2012). T-Mobile further

16  states that "[a] company that provides only wireless text-messaging services is an ECS, not an

17  RCS." ECF No. 19, at 17. But T-Mobile does not "provide only wireless text-messaging services."

18  Plaintiff's allegations are sufficient to survive T-Mobile's motion to dismiss.

19  **E.**    **Plaintiff adequately pleads a claim under the Computer Fraud and Abuse Act.**

20        1.    <u>Plaintiff sufficiently alleges that T-Mobile violation Section 1030(a)(5)(A).</u>

21        T-Mobile contends that Plaintiff must have had a conscious objective to harm Plaintiff's

22  phone in order to have violated § 1030(a)(5)(A). Not so. In a later decision in the very same case

23  T-Mobile cites repeatedly, the court explained that for a claim under § 1030(a)(5)(A), "it would

24  be sufficient to allege that the defendant intended to engage in activity that he knew would

25  impair the functionality of a protected computer, even if the primary purpose of the

26  defendant's conduct was not to cause a lack of functionality and the defendant believed that

27  the loss of functionality would be temporary." *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576,

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 17
Case No. 2:23-cv-00271-JHC

593 (E.D. Penn. 2016). Here, T-Mobile knew that effectuating the SIM swap would result in impairing the functionality of Plaintiff's phone. Even if T-Mobile believed that the purpose of the SIM swap was to only temporarily interrupt Plaintiff's cell service by porting his number to another SIM card owned by Plaintiff, that does not negate T-Mobile's knowledge that its actions would impair Plaintiff's ability to use his phone. The requisite intent here, in other words, is the <u>intent to engage in the activity that caused the disruption</u>, not any kind of "malicious" intent. Plaintiff's claim survives.

2.     <u>Plaintiff alleges that T-Mobile acted "without authorization."</u>

T-Mobile points to the T&Cs yet again, arguing that Plaintiff gave permission for T-Mobile to access his device and, therefore, that any access by T-Mobile was authorized. But T-Mobile has not shown that Plaintiff assented to the T&Cs. And the changes that T-Mobile effectuated on Plaintiff's cell phone (namely, reassigning his phone line away from Plaintiff's SIM card to the SIM card of a scammer) were not authorized. To the contrary, Plaintiff alleges that T-Mobile failed to obtain proper authentication before porting his number away from his cell phone's SIM card and onto another one. *See* Complaint ¶ 2 ("[<u>S</u>]cammers convinced T-Mobile to transfer access.") (emphasis added); ¶ 3 ("Failing to exercise due diligence or properly investigate, the provider improperly activates the new SIM card."); ¶ 40 ("[U]nder the inadequate procedures implemented by T-Mobile, unauthorized persons, including T-Mobile's own officers, agents, and employees, can authenticate, access, share, and make changes to customers' information <u>without customer permission</u>.") (emphasis added). In other words, T-Mobile did not have authorization from Plaintiff (the only person who could provide such authorization) to effectuate the SIM swap. And T-Mobile clearly acted intentionally in reassigning the number, which was done by a T-Mobile employee at the scammer's request. *See* Complaint ¶ 103 ("[A] SIM swap scam requires <u>intentional access</u> to customer computer data by T-Mobile which exceeds its authority."). Thus, Plaintiff's claim under 18 U.S.C. § 1030(a)(5)(C) is adequately pleaded.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1          3.      <u>Plaintiff alleges a cognizable loss.</u>

2          T-Mobile argues that Plaintiff has not alleged sufficient harm, claiming that loss of

3  cryptocurrency alone is insufficient to meet the loss requirement under 18 U.S.C. § 1030(g). As

4  defined in the CFAA, "damage" is "any impairment to the integrity or availability of data, a

5  program, a system, or information." 18 U.S.C. § 1030(e)(8). And a "loss" is "any reasonable cost

6  to any victim, including the cost of responding to an offense, conducting a damage assessment,

7  and restoring the data, program, system, or information to its condition prior to the offense,

8  and any revenue lost, cost incurred, or other consequential damages incurred because of

9  interruption of service." 18 U.S.C.§ 1030(e)(11).

10         T-Mobile's argument regarding Plaintiff's harm allegations is wrong for several reasons.

11  First, contrary to T-Mobile's representation, theft of cryptocurrency is not the only concrete

12  harm that Plaintiff alleges he suffered. Plaintiff alleges that $2,700 was transferred out of his

13  Bank of America account, used by hackers to purchase Bitcoin, and then transfer the Bitcoin out

14  of his account. Complaint ¶ 29. This $2,700 is a cognizable loss of real money. Similarly, Plaintiff

15  alleges that he had $21,000 of "cash reserves" in his Bitcoin account, which scammers used to

16  purchase Bitcoin and then transfer out of his account. *Id.* These losses are not losses <u>of</u>

17  <u>cryptocurrency</u>; instead, they are <u>cash</u> losses that resulted from the scammer converting cash

18  into cryptocurrency.

19         Second, Plaintiff alleges losses other than the stolen money and cryptocurrency. He

20  alleges lost time; expenses, including missed work, delayed projects, and attorneys' fees and

21  costs to investigate and correct the issues resulting from the SIM swap; and costs inherent in

22  being deprived of access to and use of one's financial assets. *Id.* ¶ 52. And his allegations

23  regarding multiple trips to various T-Mobile stores to attempt to resolve the issue further

24  support his allegation of lost time spent dealing with the SIM swap issue. *See id.* ¶¶ 21-28. This

25  lost time is a cognizable loss under the CFAA.

26         Third, losses under the CFAA need not be pleaded with specificity. *See Ross*, 2020 WL

27  9848766, at *17 (finding "no authority imposing a requirement that a CFAA loss be pled with

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 19
Case No. 2:23-cv-00271-JHC

1   specificity"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 962-63 (N.D. Cal. 2014)

2   (satisfying pleading requirement by alleging that person spent "substantial time and energy" on

3   efforts to restore data). Plaintiff's allegations are thus sufficient.

4   **F.      Plaintiff adequately pleads a claim under the Washington Consumer Protection Act.**

5          To prevail on his CPA claim, Plaintiff must show (1) an unfair or deceptive act or

6   practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to business or

7   property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

8   Wn.2d 778, 784-85, 719 P.2d 531 (1986). T-Mobile challenges the sufficiency of Plaintiff's

9   complaint only as to the first element: an unfair or deceptive act or practice.

10         1.      Plaintiff does not allege a per se CPA violation.

11         T-Mobile argues that Plaintiff has not alleged a per se CPA claim. Plaintiff agrees: he did

12  not attempt to allege a per se CPA violation. Rather, he alleges that the conduct complained of

13  is unfair, both because it is inherently unfair to allow third parties to access customer accounts

14  that should have been properly safeguarded and because that conduct is prohibited by federal

15  statute. Either is sufficient to establish a CPA violation.

16         2.      Plaintiff has sufficiently alleged unfair acts or practices.

17         The CPA does not define the terms "unfair" or "deceptive," so the Washington Supreme

18  Court has "allowed the definitions to evolve through a gradual process of judicial inclusion and

19  exclusion." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 785, 295 P.3d 1179 (2013). An act or

20  practice is unfair under the CPA if it "offends public policy as it has been established by

21  statutes, the common law, or otherwise" or if it is "unethical, oppressive, or unscrupulous."

22  *Magney v. Lincoln Mut. Sav. Bank*, 34 Wn. App. 45, 57, 659 P.2d 537 (1983); *see also Klem*, 176

23  Wn.2d at 786. An act or practice "can be unfair without being deceptive." *Id.* at 787.

24  Here, Plaintiff alleges that T-Mobile's conduct is unfair for two reasons. First, T-Mobile's

25  conduct is unfair because it is illegal under the FCA, SCA, and CFAA. *See* Complaint ¶ 116. While

26  none of these statutes establish a per se violation, these statutes express a public policy

27  requiring wireless carriers to safeguard consumers' data and accounts in particular ways. It is

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 20
Case No. 2:23-cv-00271-JHC

1   unscrupulous and unfair for T-Mobile to fail to abide by duties imposed upon it by federal

2   statute. Second, T-Mobile's conduct is unfair because it permitted "third parties to access and

3   use T-Mobile customer accounts that should have been accessible only to the customer and

4   that customers reasonably expected to be secure." *Id.* ¶ 115. T-Mobile claims that because it

5   supposedly provided disclaimers and warnings regarding security risks to Plaintiff, its failures

6   should have given Plaintiff "reason to anticipate" that T-Mobile would not protect his account.

7   But that contention is a question of fact to be resolved later. Plaintiff's allegations are sufficient.

8          3.      Plaintiff has sufficiently alleged deceptive acts or practices.

9          An act or practice is deceptive if it has the capacity to deceive a substantial portion of

10  the public. *Eng v. Specialized Loan Servicing*, 20 Wn. App. 2d 435, 445, 500 P.3d 171 (2021).

11  "Even accurate information may be deceptive if there is a representation, omission or practice

12  that is likely to mislead." *State v. Kaiser*, 161 Wn. App. 705, 719, 254 P.3d 850 (2011) (internal

13  quotation marks omitted). T-Mobile argues that Plaintiff has failed to allege deceptive conduct.

14  The assertion is wrong. Plaintiff plainly, and with particularity, alleges that "T-Mobile failed to

15  disclose or made deceptive statements designed to cover up for the fact that it is aware that its

16  security procedures can and do fall short of its expressed and implied representations and

17  promises, as well as its statutory duties." Complaint ¶ 41.

18         Plaintiff's allegations are sufficient whether or not a heightened pleading standard

19  applies. Under Rule 9(b), "a party must state with particularity the circumstances constituting

20  fraud or mistake." Fed. R. Civ. P. 9(b). But the rule does not necessarily apply to statutory

21  consumer claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The

22  heightened pleading standard applies only when the plaintiff alleges a "unified course of

23  fraudulent conduct" or the claim is grounded in fraud. *Id.* at 1103-05. Courts in this district have

24  applied those rules and held that "not all claims brought under the Washington CPA must be

25  pled with the specificity prescribed by Rule 9(b)." *Street v. Amazon.com Servs., LLC*, No. 2:21-cv-

26  0912-BJR, 2022 WL 834018, at *3 (W.D. Wash. Mar. 21, 2022). This is because there is "no

27  requirement" under the CPA that the defendant's unfair or deceptive conduct was "knowing or

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS - 21
Case No. 2:23-cv-00271-JHC

1  intentional as would be required with fraud." *Grigsby v. Valve Corp.*, No. C12-0553JLR, 2013 WL

2  12310666, at *3 (W.D. Wash. Mar. 18, 2013).

3  　　　Regardless, for omission claims such as the one here, Rule 9(b)'s standard is somewhat

4  relaxed. *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010) (citing *Falk v. Gen.*

5  *Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)); *Zwicker v. Gen. Motors Corp.*,

6  No. C07-0291-JCC, 2007 WL 5309204, at *4 (W.D. Wash. July 26, 2007). In such cases, a plaintiff

7  "will not be able to specify the time, place, and specific content of an omission as precisely as

8  would a plaintiff in a false representation claim." *Falk*, 496 F. Supp. 2d at 1098–99. Omission

9  claims must simply be pled "with particularity," as Plaintiff has done here. *Nauman v. Gen.*

10 *Motors LLC*, No. C21-5150 BHS, 2021 WL 4502666, at *4 (W.D. Wash. Oct. 1, 2021) (quotation

11 omitted).

12 **G.  Should the Court determine that any of Plaintiff's claims are inadequately pleaded,**

13 **Plaintiff requests leave to amend his allegations.**

14 　　　A party may amend his or her complaint with leave of court, and "leave shall be freely

15 given when justice so requires." Fed. R. Civ. P. 15(a). "[T]his policy is to be applied with extreme

16 liberality." *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Morongo Band*

17 *of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)) (reversing denial of leave to

18 amend complaint because none of the five factors weighed against the policy of extreme

19 liberality in permitting amendments); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244

20 F.3d 708, 712 (9th Cir. 2001) ("We have stated that this policy is to be applied with extreme

21 liberality.") (internal quotation omitted); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th

22 Cir. 1999) (noting inferences should be drawn "in favor of granting the motion" to amend).

23 Leave to amend is appropriate absent a showing of undue delay, bad faith, prejudice to the

24 opposing party, or futility. *Owens*, 244 F.3d at 712 (granting leave to file an amended complaint

25 when the amendment caused no delay, required no additional discovery, and did not cause

26 opposing party to incur substantial additional litigation expenses).

27

1    Should the Court find that any of Plaintiff's claims are insufficiently pleaded, Plaintiff

2  respectfully requests that any dismissal be without prejudice and with leave to amend the

3  complaint.

4                              **IV.    CONCLUSION**

5    For the foregoing reasons, T-Mobile's motion to dismiss should be denied.

6

7    RESPECTFULLY SUBMITTED AND DATED this 22nd day of May, 2023.

8                                          TERRELL MARSHALL LAW GROUP PLLC

9                                          *I certify that this memorandum contains 8,297*
10                                         *words, in compliance with the Local Civil Rules.*

11

12                                         By: /s/ Beth E. Terrell, WSBA #26759
                                               Beth E. Terrell, WSBA #26759
13                                             Email: bterrell@terrellmarshall.com
                                               Adrienne D. McEntee, WSBA #34061
14                                             Email: amcentee@terrellmarshall.com
                                               Elizabeth A. Adams, WSBA #49175
15                                             Email: eadams@terrellmarshall.com
                                               936 North 34th Street, Suite 300
16                                             Seattle, Washington 98103
                                               Telephone: (206) 816-6603
17                                             Facsimile: (206) 319-5450
18
19                                             Joseph A. Fitapelli, *Pro Hac Vice Pending*
                                               Email: jfitapelli@fslawfirm.com
20                                             Frank J. Mazzaferro, *Pro Hac Vice Pending*
                                               Email: fmazzaferro@fslawfirm.com
21                                             FITAPELLI & SCHAFFER, LLP
                                               28 Liberty Street, 30th Floor
22                                             New York, New York 10005
                                               Telephone: (212) 300-0375
23
24                                             *Attorneys for Plaintiff and the Proposed Class*
25
26
27